■ In the Matter of GILBERT RAMOS, Respondent, v MARY P. DOLAN, as Commissioner of the Tompkins County Department of Social Services, Respondent, and LUZ RAMOS, Appellant.— Levine, J. Appeal from an order of the Family Court of Tompkins County (Friedlander, J.), entered October 28, 1988, which granted petitioner's application, in a proceeding pursuant to Family Court Act articles 6 and 10, for custody of his two children.

Petitioner, Gilbert Ramos, and respondent Luz Ramos (hereinafter respondent) were married in 1978 and have two daughters, Tandy, born in 1979, and Linette, born in 1983. Both parties originally came from Puerto Rico before ultimately settling in Tompkins County. In about 1986, they experienced serious marital conflicts arising out of petitioner's liaison with another woman, Evelyn Diaz. Petitioner subsequently alternated living with respondent and Diaz. In April 1987, petitioner left the marital residence and disappeared with the two children; respondent did not discover their whereabouts until petitioner, Diaz and the children were located in Lawrence, Massachusetts, in July of that year. The children were restored to respondent by court order and a custody proceeding then took place in Tompkins County, with hearings extending into December 1987.

At the conclusion of the hearings, Family Court (Barrett, J.) awarded custody to respondent, by decision dated December 18, 1987, finding both parents fit, rejecting petitioner's assertions that respondent was an alcoholic and abused the children and further finding that respondent had been the primary caretaker for the children before they were taken away by petitioner. The proof herein established that, on December 19, 1987, before respondent received notice of the court decision awarding her custody, a physical altercation occurred between her and Tandy when respondent became upset over Tandy's expression of preference for living with her father. During the altercation, Tandy received various scratches and bruises. Petitioner learned of this upon exercising visitation with the children the following day and reported the incident to the appropriate Tompkins County child protective authorities. The matter was investigated and the children were removed and later temporary custody was given to petitioner. Petitioner then initiated this proceeding to modify the previous, recently granted custody order in favor of respondent by

transferring permanent custody to him. After yet another set of protracted hearings, before a different Family Court Judge (Friedlander, J.), the court rendered a decision modifying the prior order, granting primary custody of both children provisionally to petitioner for approximately the next 10 months, until the beginning of the 1989-1990 school year, subject to the right of either party to seek further review of the custody arrangement at that time. This appeal by respondent ensued.

There should be a reversal. While it is true that great deference is accorded the Family Court in making custody determinations where its decision is supported by evidence in the record *(see, Matter of Robb v McIntosh,* 99 AD2d 571, 572), as in all nonjury cases, if on all of the credible evidence a different finding is not unreasonable, this court must weigh the relative probative force of conflicting testimony and relative strength of conflicting inferences and, on that basis, may make alternative findings *(see, Bestway Constr. v Broome County,* 107 AD2d 897, 901; *D'Arienzo v Manderville,* 106 AD2d 686, 688). Such is the case here.

Where, as here, the custody order to be modified was of recent origin following a plenary trial of the issues, even more so than an order resulting from a voluntary agreement of the parties, the prior decision is entitled to substantial weight in considering the totality of the circumstances *(Friederwitzer v Friederwitzer,* 55 NY2d 89, 94-95; *Matter of Mitchell v Mitchell,* 95 AD2d 875, 876). Family Court found countervailing considerations in favor of modifying the prior order, consisting primarily of respondent's loss of temper resulting in the December 1987 physical incident, which the court found to have intensified Tandy's desire to reside with her father, respondent's volatile nature and intense hostility to petitioner and his paramour, and the relatively greater stability and calmness of the living atmosphere in petitioner's home. The court expressed its concern over respondent's capacity to insulate the children from her deep-seated emotional bitterness toward petitioner and Diaz. The court expressly made the foregoing findings on the totality of the evidence, but particularly upon the recommendations and reports of Dr. Willa Grunes, a clinical psychologist who had counseled and assessed the parties and the children from time to time both before and after the instant proceeding was commenced, and the reports of court-ordered probation department custody investigations of both parties' homes.

In our view, the evidence at the hearing significantly undercut the factors relied upon by Family Court in arriving at its

decision. To begin with, various reports, including that of Grunes, could be read as identifying the predominant cause of the extreme emotionality of both respondent and Tandy to the stress of the uncertainty of the outcome of the earlier, protracted custody contest, which, to respondent's and Tandy's knowledge, was still undecided when the unfortunate incident of December 19, 1987 occurred. As to that incident, Grunes specifically testified that it alone was insufficient as a justification for changing custody. Regarding Family Court's findings as to the greater stability of petitioner and his living environment, the court apparently gave little weight to petitioner's purposeful act of absconding with the children and his indifference to both respondent's and especially the children's needs for contact over the period of several months while their whereabouts was unknown. Grunes also expressed serious questions as to the stability of the relationship between petitioner and Diaz and the genuineness of her concern for the children should difficulties between her and petitioner arise. It was for these reasons that the court only provisionally changed custody.

While Grunes' report did describe respondent's volatile personality and doubts as to her ability not to let her hostility toward petitioner affect her dealings with the children (as Family Court so found), upon cross-examination Grunes conceded that respondent had made extraordinary personal progress and shown exceptional strength in withstanding the stress and anxiety over the danger of losing her children. Of most significance, this expert testified that respondent had developed sufficient insight to know to seek help from friends and professionals when she needs it. This conclusion is confirmed by the assessment of respondent by the Director of the Tompkins County Mental Health Clinic. In short, it is our view that the better inference from the evidence is that respondent's volatility and the single occasion of her loss of control are not inherent aspects of her personality, but are far more to be attributed to the situation in which she found herself, at risk of losing her children, having neither the financial resources nor emotional support enjoyed by petitioner and justifiably distrustful of petitioner's willingness to provide her significant contact with the children should she lose custody. These factors would largely have been obviated had Family Court confirmed the original custody order and finally settled the matter. Family Court's award of only provisional custody to petitioner serves to prolong the uncertainties and instability in the lives of the children and invites the

continued manipulation of the children engaged in by both parties, all of which the experts uniformly found especially damaging.

In disagreeing with Family Court's conclusions, we find that stability in the children's lives was in their best interests and would have been better served by giving greater weight to the prior custody order, rather than "by a continuous series of proceedings seeking to relitigate the matter of custody *de novo*" *(Matter of Robb v McIntosh,* 99 AD2d 571, *supra).* Additionally, we attach greater significance to the calculated act of petitioner in depriving respondent of all contact with the children over an extended period, which did not end by any voluntary decision of petitioner *(see, Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938; *see also, Skolnick v Skolnick,* 142 AD2d 570, 571). We note also the Law Guardian's doubts on whether petitioner would accommodate visitation if he were granted custody and the Law Guardian's conclusions and recommendations in favor of continuing the prior custody order.

Order reversed, on the facts, with costs, and petition dismissed. Kane, J. P., Casey, Yesawich, Jr., Levine and Mercure, JJ., concur.