■ In the Matter of THERESA CC. and Others, Alleged to be Neglected Children. SULLIVAN COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant; JAMES CC. et al., Respondents.—Levine, J. Appeal from an order of the Family Court of Sullivan County (Hanofee, J.), entered April 25, 1990, which dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 10, to adjudicate respondents' children to be neglected.

Respondents are the parents of three children: Theresa (born 1975), Thomas (born 1978) and Joseph (born 1982). Respondents were alleged by petitioner to have neglected the children by impairing or causing the imminent danger of impairment of the children's mental or emotional condition as the result of their failure to exercise a minimum degree of care. Specifically, respondents were charged with continuously engaging in domestic violence against each other in the presence of the children over a 10-year period, resulting in the impairment of the children's mental and emotional health. At the conclusion of the fact-finding hearing in this proceeding under Family Court Act article 10, Family Court concluded

that petitioner failed to meet its burden of proof and dismissed the petition. This appeal by petitioner followed.

We reverse. From our reading of the record, the evidence adduced by petitioner satisfied the statutory burden of establishing emotional neglect by respondents of their three children, namely, "a state of substantially diminished psychological or intellectual functioning * * *; provided, however, that such impairment must be clearly attributable to the unwillingness or inability of the respondent[s] to exercise a minimum degree of care toward the child[ren]" (Family Ct Act § 1012 [h]).

First, friends, neighbors and police officers testified at the hearing to a pattern of repeated incidents at respondents' residence over a 10-year period wherein they were observed kicking, beating and shouting obscenities at each other in front of the children. Following several of these incidents, caseworkers from petitioner and the Onondaga County Department of Social Services were called in to assist the children. They testified to the fear and distress the children were experiencing as a result of their exposure to these altercations.

The family was evaluated in 1981 at the Sullivan County Mental Health Clinic in connection with behavioral problems of their oldest child, Theresa, then age six. The mental health professional who assessed the child identified the source of her anxiety as "marital conflict and Theresas' *[sic]* resulting peace maker role". Among the reasons cited for this conclusion was that Theresa "ha[d] been enuretic off and on and [her] parents report that *her enuresis coincides with family turmoil"* (emphasis supplied). Indeed, at that time, both respondents freely admitted that Theresa was affected by "their arguments which have often led to physical attack".

In 1986, the children were seen by an Onondaga County child protective caseworker while temporarily in the care of a maternal aunt in Syracuse after a particularly violent episode. Theresa was rebellious and defiant and still enuretic at age 11. Her brother Thomas was withdrawn. The caseworker related how the children expressed being upset and depressed by the domestic violence; when the father was interviewed, he again conceded that the family violence was having a deleterious effect on the children.

Subsequently, in 1988, the children were counseled on several occasions by a therapist at the Sullivan County Mental Health Clinic. As to the child Joseph, who was acting out both

violently and sexually, the therapist stated that, in her opinion and that of the staff at the clinic, Joseph's behavior was at least partly attributable to the domestic violence in the household, i.e., "discord in the family could have *very strongly* led to some of the problems [he was] experiencing" (emphasis supplied). She supported her conclusion by the child's drawings and playing out scenes of domestic violence with dolls during therapy.

The inference of a causal relationship between respondents' conduct and the impaired condition of the children is also supported by the testimony of David Pelcovitz, a clinical psychologist from Long Island who was a specialist in studying children witnesses of domestic violence. It is true that he testified without ever having examined the children, but the hypothetical question he answered was based upon his reading of the pertinent records and case history of the family. He testified that the emotional and behavioral problems of respondents' children were consistent with his general findings in his studies of the effects upon children of witnessing domestic violence. Although he conceded that other factors could have contributed to the condition of the children, he stated unequivocally that a causal relationship between their problems and witnessing parental violence "is certainly very consistent and very likely".

We believe that the foregoing cumulatively would warrant a finding that the children's serious pathology was at least partially due to their apparently regular and continuous exposure to extremely violent conduct between respondents. This being so, despite the deference generally accorded to Family Court's determinations, this court must weigh the relative probative force of any conflicting testimony and the relative strength of conflicting inferences and, on that basis, may make alternative findings *(see, Matter of Ramos v Dolan,* 155 AD2d 787, 788).

We conclude that the weight of the evidence in this record supports a finding of neglect. Despite Family Court's contrary finding, the evidence overwhelmingly demonstrated serious impairment of the children's emotional health. Since respondents chose not to testify at the hearing or otherwise submit proof of any plausible alternative reason for such impairment, we are left only with the previously described credible evidence clearly attributing the children's impaired emotional condition, at least in significant part, to the spousal violence to which they were exposed.

Mikoll and Crew III, JJ., concur.

Casey, J. (dissenting). Pursuant to Family Court Act § 1012 (h), petitioner bore the burden of proving that the impairment of the physical, mental or emotional health of respondents' children was "clearly attributable to the unwillingness or inability" of respondents to exercise a minimum degree of care toward their children. It is our view that the evidence submitted by petitioner, from which the majority constructs an inference of causal relationship, fails to satisfy the "clearly attributable" standard imposed by the statute. Family Court's order should be affirmed and, therefore, we respectfully dissent from the majority's holding to the contrary.

Mahoney, P. J., concurs. Ordered that the order is reversed, on the facts, without costs, petition granted, respondents' children are adjudicated to be neglected and matter remitted to the Family Court of Sullivan County for a dispositional hearing.