58

[673 NYS2d 116]

In the Matter of Lonell J., Jr., and Another, Children Alleged to be Neglected. Lonell J. et al., Respondents; Nicholas Scoppetta, Appellant.

First Department, May 19, 1998

## APPEARANCES OF COUNSEL

*Joanne A. Zervos* for Lonell J., respondent.

*Jay A. Maller* for Nicole B., respondent.

*Stuart D. Smith* of counsel (*Larry A. Sonnenshein* on the brief; *Paul A. Crotty,* attorney), for appellant.

*Marcia Egger* of counsel (*Jane M. Spinak, Law Guardian*), for infants.

## OPINION OF THE COURT

ROSENBERGER, J.

The issue in this case is whether a pattern of domestic violence between respondent parents in the presence of their children may be sufficient to establish neglect under Family Court Act § 1012, absent expert testimony that the parents' strife has caused specific harm to the children.

Respondents Lonell J. (the father) and Nicole B. (the mother) are the parents of Latisha (born May 14, 1993) and Lonell, Jr. (born June 15, 1995). When the incidents giving rise to this action took place, the family lived in a Tier 2 Shelter in the Bronx. The Administration for Children's Services (ACS) removed the children from the parents' home on January 11, 1996, and they have been in foster care since then. Neglect petitions were filed against the parents on January 16, 1996, based on alleged instances of medical neglect and of domestic violence in which the father beat the mother in front of the children. The petitions also alleged that the parents had failed to attend the counseling prescribed by the Child Welfare Administration.

A fact-finding hearing was held over four days in December 1996. Two ACS caseworkers presented evidence that the father habitually abused the mother and also testified to their observations of the children's poor health and unsanitary condition. Caseworker Darlyn Shepard stated that when she first visited respondents in December 1995, the children smelled of urine, Lonell, Jr. was feverish and vomiting and Latisha was wearing a diaper that needed changing. On several occasions, the mother complained to Shepard that the father was hitting her and forcing her to have intercourse with him. However, she refused to follow Shepard's advice that she go with the

children to a battered women's shelter. Shepard then ceased working with the family due to the father's objections.

ACS caseworker Nancy Sanchez testified that she began working with the family when she received a 2221 report from the police department that the parents had been forced to take Lonell, Jr. to the hospital. She learned from Shepard that the father had been arrested for hitting the mother. When Sanchez visited the family on January 10, 1996, Lonell, Jr. was lying in his crib covered with vomit. The mother admitted that the father hit her, but she said she deserved it. Sanchez later discovered that the mother had left the family briefly to go to live with her mother, but had then returned.

Other evidence at the hearing indicated that the police had been called on several occasions over a one-month period due to the parents' fights: on November 29 and 30, 1995; on December 26 and 27, 1995; and on January 4 and 5, 1996. The January visit resulted in the father's arrest. An order of protection was issued against him on January 6. The father denied that these events had occurred, but the mother admitted it, though she tried to minimize the extent of the violence.

The parents offered alternate explanations for the children's allegedly sickly and unkempt condition. Lonell, Jr. was said to be suffering from an illness that made it hard for him to keep food down. The parents stated that they had taken him to the doctor several times for this condition. As for Latisha's diaper, they said that the caseworker had come early in the morning, before the parents had a chance to change the diaper from the night before.

The hearing court concluded that the petitioner had failed to prove medical neglect. While the court believed that the parents were not credible as to the extent of the fighting, it refused to find emotional neglect on this basis. The court's position was that until the Legislature amended Family Court Act § 1012 to make domestic violence between parents a per se act of neglect, expert testimony was necessary to establish that these children had been traumatized by witnessing their parents' fights. Accordingly, it dismissed the petitions. We find that this was error.

The hearing court's interpretation of Family Court Act § 1012 was unnecessarily narrow, especially in light of the legislative pronouncements on domestic violence that the hearing court itself cited in its supplemental opinion (*Matter of Latisha J.*, NYLJ, Apr. 16, 1997, at 28, col 1). Family Court Act § 1012 (f) (i) defines a "neglected child" as one "whose physical, mental or

emotional condition has been impaired or is in imminent danger of becoming impaired" by the parent's failure to exercise minimal care. The statute enumerates various examples of neglectful behavior (e.g., parental drug abuse, failure to provide food or medical treatment), but also states that in addition to these examples, a finding of neglect can be based on "any other acts of a similarly serious nature requiring the aid of the court" (Family Ct Act § 1012 [f] [i] [B]).

It appears that the hearing court mistakenly read Family Court Act § 1012 according to the principle of *inclusio unius est exclusio alterius*, ignoring the plain language of section 1012 (f) (i) (B), whose catch-all provision (quoted, *supra*) clearly contemplates that the instances of neglectful behavior mentioned therein are not an exclusive list. The statute's goal of protecting children from all types of dangerous parental misconduct would not be well served by an interpretation requiring a higher burden of proof as to any type of neglect not so enumerated.

Moreover, nothing in section 1012 itself requires expert testimony, as opposed to other convincing evidence of neglect. In fact, Family Court Act § 1046 (a) (viii), which directly addresses this issue, does not support the hearing court's reasoning. That provision states that "proof of the 'impairment of emotional health' or 'impairment of mental or emotional condition' as a result of the unwillingness or inability of the respondent to exercise a minimum degree of care toward a child *may include* competent opinion or expert testimony" (emphasis added). Such inclusive language undermines any conclusion that expert testimony is required.

The cases relied on by the hearing court do not compel a different conclusion. In *Matter of Bryan L.* (149 Misc 2d 899), the Rockland County Family Court made no reference to a need for expert testimony and instead appeared to adopt a per se rule that the father's severe and repeated physical abuse of the mother in the 14-month-old child's presence could never constitute neglect unless the child was placed "in imminent risk of physical impairment" (*supra,* at 904). We do not find this reasoning persuasive, in light of the fact that Family Court Act § 1012 is equally concerned about imminent *emotional* harm.

In *Matter of Theresa CC.* (178 AD2d 687) and *Matter of Michael M.* (156 Misc 2d 98), expert testimony was presented, but the courts did not suggest that it was required. Significantly, in *Matter of Michael M. (supra)*, where neglect was found based on the children's witnessing the father's abuse of the mother,

the children were aged 10 and 8, and in *Matter of Theresa CC. (supra)*, they were 15, 12, and 8 when the finding of neglect was entered by the Appellate Division. Because of their age, the children in these cases were able to communicate with a psychological expert regarding the effects of domestic violence on their emotional and mental state, unlike the toddler and infant in the instant case. To require expert testimony of this type in the latter situation would be tantamount to refusing to protect the most vulnerable and impressionable children. While violence between parents adversely affects all children, younger children in particular are most likely to suffer from psychosomatic illnesses and arrested development (Comment, *Protecting New York's Children: An Argument for the Creation of a Rebuttable Presumption Against Awarding a Spouse Abuser Custody of a Child,* 60 Alb L Rev 1345, 1351, n 45 [1997]).

In its supplemental opinion, which urges the Legislature to amend section 1012 to define domestic violence in the child's presence as neglect, the hearing court quoted legislative history taking notice of the physical and mental effects of spousal abuse on children. In enacting the Family Protection and Domestic Violence Intervention Act of 1994 (L 1994, ch 222), the Legislature cited several studies proving that children in violent homes experience delayed development, psychosomatic illness and feelings of fear and depression, and often become the victims of abuse themselves (*see, Matter of J. D. v N. D.,* 170 Misc 2d 877, 884 [where the court found that the father's abuse of the mother "show(ed) that it would not be in the child's best interests to place him in (the father's) care and custody"]). Unlike the respondent mother here, the mother in *Matter of J. D.* was willing to take the child away from the abusive father. It seems only logical that parents' spousal abuse, no less than their drug and alcohol abuse (specifically mentioned in section 1012), should be considered "other acts of a similarly serious nature" under section 1012 (f) (i) (B). To hold otherwise would be to find that spousal abuse, in which the immediate physical harm is to the nonabusing parent of the child, is necessarily less serious than substance abuse, in which the immediate physical harm is to the abuser himself.

This conclusion is borne out by the two caseworkers' independent observations of Lonell, Jr.'s fever, repeated vomiting and soiled bedding. Studies show that infants exposed to domestic violence often experience poor health and eating problems (Comment, *Unseen Victims: Acknowledging the Ef-*

*fects of Domestic Violence on Children Through Statutory Termination of Parental Rights*, 84 Cal L Rev 757, 789 [1996]). Based on a review of the record, we find that the subject children were neglected within the meaning of Family Court Act § 1012.

Accordingly, the order of the Family Court, Bronx County (Bruce Kaplan, J.), entered December 10, 1996, dismissing the neglect petitions against respondent parents, should be reversed, on the law and the facts, without costs, the petitions reinstated, findings of neglect entered, and the matter remanded to the Family Court for a dispositional hearing to determine an appropriate remedy that will protect the children's best interests.

MILONAS, J. P., NARDELLI, WALLACH and RUBIN, JJ., concur.

Order, Family Court, Bronx County, entered December 10, 1996, reversed, on the law and the facts, without costs, the petitions reinstated, findings of neglect entered, and the matter remanded to the Family Court for a dispositional hearing to determine an appropriate remedy that will protect the children's best interests.