Sharwline **NICHOLSON**, individually and on behalf of her infant children, and on behalf of all others similarly situated, and J.A. and G.A., infants on behalf of all others similarly situated, Plaintiffs,

v.

Nat **WILLIAMS**, et al., Defendants.

Ekaete Udoh, individually and on behalf of her infant children, and J.A. and G.A., infants on behalf of all others similarly situated, Plaintiffs,

v.

Nicholas Scoppetta, et al., Defendants.

Sharlene Tillett, individually and on behalf of her infant children, and J.A. and G.A., infants on behalf of all others similarly situated, Plaintiffs,

v.

Nicholas Scoppetta, et al., Defendants.

Nos. 00–CV–2229, 00–CV–5155, 00–CV–6885.

United States District Court, E.D. New York.

Aug. 16, 2001.

**94**

Carolyn A. Kubitschek, Joanne Nancy Sirotkin, Christopher S. Weddle, Lansner & Kubitschek, Jill Marie Zuccardy, Sanctuary for Families Battered Women's Legal Services, New York City, for Sharwline Nicholson, Destinee Barnett, Kendell Coles, Ekaete Udoh and Sharlene Tillett.

Caroline Michelle Wolpert, Martha Anne Calhoun, Frank Michael Esposito, Paul Aronson, Martha Anne Calhoun, Lisa M. Brauner, Corporation Counsel of the City of New York, New York City, for Nat Williams Bethy Victorin, Denise Degannes, Samuel Halston, Lisa Clark, Nicholas Scoppetta, Vivian Lopez, Arlene Irizarry, Vincent Stropoli, Brian Martin, City of New York, Howard Safir, Jane Doe, John Roe, Shakira Panther–Wilburg, YMSI Holloway, Cheryl Constantine, Nidia Cordero and Dorabella Delamothe.

William H. Bristow, III, NYS Attorney General, Shawn Kerby, Office of Court Administrator, New York City, for George E. Pataki, Jonathan Lippman, John Johnson, State of New York.

Shawn Kerby, Office of Court Administrator, New York City,

*Memorandum and Order*

WEINSTEIN, Senior District Judge.

## I. *Introduction:*

Plaintiffs who prosecute this case are mothers who claim they have been physically abused by the men in their lives; that their children have been removed from their custody and kept separated from them by the New York Administration for Children's Services (ACS) on the ground that they have been subjected to domestic violence by these men; and that both the mothers and their children have had their federal constitutional rights violated in the process. U.S. Const. amend. I, IV, XIV; 42 U.S.C. § 1983.

They bring a class action against individuals and ACS, the city of New York and its various departments, and the state of New York (whose Office of Children and Family Services and judicial system, including court-appointed counsel for the mothers, participate in this alleged pervasive denial of federal constitutional rights to this group of battered mothers and their children). In short, they contend that as a group, and individually, battered mothers punished physically by their abusers are punished a second time psychologically and emotionally by the government which deprives them of their children, and the children of them. Defendants do this, it is claimed, in large part because being passively battered has been characterized by ACS as "engaging in domestic violence," making the victim unfit to care for her children.

Plaintiffs have moved for certification of the class and a preliminary injunction. Two months of evidentiary hearings during July and August with supporting testimony from scores of witnesses and hundreds of documents lend substantial support to their claims. The class is now certified. The motion for a preliminary injunction will be considered following completion of the hearings.

During the course of the hearings the court appointed a "next friend" for the children pursuant to Rule 17(c) of the Federal Rules of Civil Procedure. Subclassing was ordered by the court to avoid possible conflicts of interest between the mothers and children. The court invited legal representatives to participate on behalf of a subclass of children and allowed attorneys for the original plaintiffs to proceed as representatives of a subclass of mothers. Upon commencing representation of the children counsel substituted more appropriate child representatives (J.A. and G.A.) for those originally named.

An advertisement placed in the New York Law Journal and announcements in court indicated that the court was prepared to

recognize a subclass of alleged batterers who might have an interest in not being separated from the children or the mothers. No representative of the alleged batterers came forward. The case can proceed effectively without one.

The parties have proposed various definitions of a class. Based upon the evidence to date, and the court's preference to keep the class as narrow and precise as possible to avoid unnecessary interference with state and local government, the following class will be certified, with two subclasses, pursuant to Rules 23(b)(1)(A) and 23(b)(2) of the Federal Rules of Civil Procedure:

## II.  *Class Definition:*

Subclass A shall consist of:

All persons subject to domestic violence or its threat who are custodians of children, legally or de facto, if:

1. the children reside or resided in a home where battering was said to have occurred, but where the children themselves have not been physically harmed or threatened with harm, or neglected by the non-battering custodian, and where protection of the children and their best interests can be accomplished by separation of the alleged batterer from the custodian and children or by other appropriate measures without removal of the children from the non-battering custodian; and if,

2. the children are sought to be removed or were removed by the New York City Administration for Children's Services (ACS) or other governmental agency without court order (even if removal is ultimately approved by a court), in whole or in part because the children reside in a home where battering of the custodian was said to have occurred; or

3. the custodian is named as a respondent by ACS in child protective proceedings by ACS under Article 10 of the New York Family Court Act in which removal may be sought (even if removal is ultimately approved by a court), in whole or in part because the children reside in a home where battering of the custodian was said to have occurred; or

4. the custodian is denied adequate counsel;
   a) in proceedings required by law before ACS which may confirm or lead to removal of a child or failure to promptly return a removed child; or
   b) in court proceedings which may confirm or lead to removal of a child or failure to promptly return a removed child.

Subclass B shall consist of:

All children who are or were in the custody of a custodian in subclass A:

1. who have been or are likely to be removed by ACS or other governmental agency since December 16, 2000; or

2. who were removed prior to December 16, 2000 and continue to be in removed status after December 16, 2000; or

3. who have not been returned to the custodian as soon as possible after December 16, 2000 pursuant to a court order, where;
   a) ACS has no discretion to delay the child's return; or
   b) ACS has discretion to delay or condition the child's return, but delay or conditions are not necessary for the protection of the child.

The definition of the class is conditional and may be altered or amended before a final decision on the merits. *See* Fed.R.Civ.P. 23(c)(1). No notice to other members of the class is required at this time, but it may be required as part of a final decree notifying clients of ACS and others. *See id.;* Fed. R.Civ.P. 23(c)(2)(3), (d). Subclasses were required by the court. *See* Fed.R.Civ.P. 23(c)(4).

## III.  *Class Action Rule:*

The applicable portions of Rule 23 read:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that

joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . .

The evidence establishes that the requirements for certification of a class are met by a preponderance:

(A) Each subclass is so numerous that joinder of all members is impractical.

(B) There are questions of fact and of law common to members of each of the subclasses.

(C) The claims of the representatives of each of the subclasses are typical of the claims of all members of their respective subclass.

(D) The representative parties and their counsel will fairly and adequately protect the interests of members of the subclasses.

(E) Prosecution of separate actions by the individual members of the subclasses would create a risk of inconsistent and varying adjudications with respect to individual members of the class and subclasses and would establish incompatible standards of conduct for defendants.

(F) The defendants have acted on grounds generally applicable to the subclasses, thereby making appropriate consideration of both preliminary and final injunctive relief with respect to the subclasses. (The court has not yet decided if either preliminary or final relief should be granted; further hearings are required.)

The original complaint requested monetary relief. Such relief cannot be granted in this class action because of varying factual patterns affecting money damages claimed by individual members of the subclasses. Such monetary claims are severed. They will be tried individually. Control of discovery over such severed claims is respectfully referred to the Magistrate Judge.

## IV. *General Factual Considerations:*

At the moment, it is enough merely to point out the complexities of the case. Myriad federal, state and municipal statutes and regulations are implicated. *Cf., e.g.,* The Adoption and Safe Families Act of 1997, 42 U.S.C. § 675(5)(E) (promoting stability and permanence for abused and neglected children by requiring timely decisionmaking in proceedings to determine whether children can safely return to their families or whether they should be moved into safe and stable adoptive homes or other permanent family arrangements outside the foster care system); The Violence Against Women Act of 1994, 18 U.S.C. § 2261(a)(1) (creating a private right of action against "[a] person who travels across a State line or enters or leaves Indian country with the intent to injure, harass, or intimidate that person's spouse or intimate partner, and who, in the course of or as a result of such travel, intentionally commits a crime of violence and thereby causes bodily injury to such spouse or intimate partner, shall be punished as provided in subsection (b)."); The Child Abuse Prevention and Treatment Act Amendments of 1984, 42 U.S.C. §§ 5101–5106a (defining "child abuse or neglect" as "physical or mental injury, sexual abuse, negligent treatment, or maltreatment of a child under the age of eighteen by a person who is responsible for the child's welfare under circumstances which indicate that the child's health or welfare is harmed or threatened thereby"); New York Family Court Act §§ 1011 *et seq.* (providing

for child protective proceedings against custodial parents accused of abuse or neglect).

Huge tracts of case law are also implicated, particularly those analyzing the historic tension between the constitutional rights of parents, and the interests of the state as *parens patriae*, in protecting children. *See, e.g., Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (parent has a fundamental constitutional right to direct the upbringing and education of his or her child); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (same); *In re Phillip B.*, 92 Cal.App.3d 796, 156 Cal. Rptr. 48 (Cal.Ct.App.1979) (recognizing that parental autonomy is a fundamental constitutional right); *see also, e.g., Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000) (mere possibility of danger is not enough for the due process clause not to be offended when a child is taken into custody by a responsible state official without court authorization or parental consent); *In re Lonell J.*, 242 A.D.2d 58, 673 N.Y.S.2d 116 (N.Y.App.Div.1998) (holding that definition of neglect under the New York Family Court Act was sufficiently broad to encompass exposure to domestic violence and finding custodial mother who was passive recipient of battering neglectful in part for having "engaged in domestic violence").

The history of the problem is extremely complex. *Cf., e.g.,* Nina Bernstein, *The Lost Children of Wilder* (2001) (chronicling the twenty-year struggle to resolve the *Wilder* case, a federal suit brought on behalf of a class of children who suffered racial and religious discrimination under the New York City foster care system); Stephen O'Connor, *Orphan Trains: The Story of Charles Loring Brace and the Children He Saved and Failed* 37 (2001) ("Domestic violence and substance abuse were problems at least as serious during the nineteenth century as they are now."); "Failure to Protect" Working Group, *Charging Battered Mothers with Failure to Protect: Still Blaming the Victim*, 27 Fordham Urb. L.J. 849, 871 (2000) ("[Domestic violence] advocates now find themselves assisting battered mothers who are losing their children to foster care and who are being charged with abuse or neglect for failing to protect their children from witnessing domestic violence . . . [they] are punished and children are traumatized by the separation while the perpetrator of the violence generally experiences few consequences."); Nina Berstein, *Swelling Shelters: New Number Generating Debate About Efforts to House Homeless*, N.Y. Times, Aug. 2, 2001, at B3; Nina Bernstein, *Rise of Shelters by Families Sets Record in City*, N.Y. Times, Aug. 1, 2001, at 1 ("The number of homeless families lodging nightly in New York City's shelter system has risen higher than ever and the trend is accelerating"); Daniel Wise, *Judges' Associations May Join Suit Over Review of 18–B Fees*, N.Y. Times, July 24, 2001, at 1 (three Family Court judges announced in court rulings that because the low rates of $25–$40 per hour for 18–B lawyers had created a critical shortage of attorneys in their courtroom, they would in the future pay the lawyers $75 an hour).

## IV.  *Applicable Law:*

## CLASS DEFINITION

District judges have broad discretion over class definition. *See Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir.1999) (*citing* Fed.R.Civ.P. 23(c)(4) ("When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.")).

Nevertheless, "it is . . . necessary to arrive at a definition that is precise, objective, and presently ascertainable." Manual for Complex Litigation 30.14 (3d ed.1995). Because of the notice requirement and the frequent necessity of having to deal with individual damage claims, greater precision is required in (b)(3) actions than in those brought under (b)(1) or (b)(2). *See id.* The class definition resulted from a variety of proposals from representatives of the plaintiffs and repeated conferences with the court. It is sufficiently precise and narrow, and may be modified as the case develops.

## A. Numerosity

■ The relevant inquiry under Rule 23(a)(1) is whether the class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Plaintiffs need not establish the precise number of potential class members since courts are empowered to "make 'common sense assumptions' to support a finding of numerosity." *German v. Fed. Home Loan Mortgage Corp.*, 885 F.Supp. 537, 552 (S.D.N.Y.1995) (citations omitted); *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993) ("impracticable does not mean impossible"); *Barlow v. Marion County Hosp. Dist.*, 88 F.R.D. 619, 625 (M.D.Fla.1980) ("[p]laintiffs must show some evidence of or reasonably estimate the number of class members but need not show the exact number").

The court of appeals for the Second Circuit has relaxed the numerosity requirement where the putative class seeks injunctive and declaratory relief pursuant to Rule 23(b)(2). *See Robidoux v. Celani*, 987 F.2d 931, 935—36 (2d Cir.1993); *Bruce v. Christian*, 113 F.R.D. 554, 557 (S.D.N.Y.1986) (numerosity found because, although plaintiffs could identify only 16 class members in action brought by present and future tenants of New York City Housing Authority, numerous individuals would be affected in the future and the fluid nature of the class supported certification); *see also, e.g., Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir.1975) (liberal construction given to numerosity requirement in civil rights suit seeking injunctive relief on behalf of future class members); *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir.1974) (per curiam) (presence of unknown future African–American victims of employment discrimination sufficient to establish numerosity in discrimination action brought by former employee); *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir.1974) (numerosity satisfied where a class action is particularly suited to protect future victims of discrimination); *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D.Pa.1990) (noting that "court may certify a class even if it is composed of as few as 14 members" in action brought against Secretary of Health and Human Services pursuant to Rule 23(b)(2)); Fed.R.Civ.P. 23(b)(2) advisory committee notes (1966) (certification is appropriate "even if [the action of inaction] has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class").

## B. Commonality

■ There is an assumption of commonality where plaintiffs seek certification of an injunctive class under Rule 23(b)(2) to right alleged constitutional wrongs. *See Marisol A. ex rel. v. Giuliani*, 929 F.Supp. 662, 690 (S.D.N.Y.1996) ("*Marisol I*"), *aff'd*, 126 F.3d 372 (2d Cir.1997); *see also Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir.1994) ("(b)(2) classes have been certified in a legion of civil rights cases where commonality findings were based primarily on the fact that defendant's conduct is central to the claims of all class members irrespective of their individual circumstances and the disparate effects of the conduct."); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1763, at 201 (1986) ("[I]njunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)").

The court of appeals for the Second Circuit has held that commonality is satisfied in the context of child welfare class actions where the named plaintiffs share only one question of law and fact with the grievances of the prospective class, despite "differences among the questions raised by individual members." *Marisol I*, 929 F.Supp. 662, 690 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir.1997) (*quoting German v. Fed. Home Loan Mortgage Corp.*, 885 F.Supp. 537, 553 (S.D.N.Y.1995)); *see also, e.g., Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir.1994).

## C. Typicality

■ Typicality is satisfied where the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members. *See Marisol I*, 929 F.Supp. 662, 691 (S.D.N.Y.1996), *aff'd*, 126 F.3d 372 (2d Cir. 1997) (*citing Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir.1994); *see also Wilder v. Bern-*

*stein,* 499 F.Supp. 980, 992 (S.D.N.Y.1980)) ("There is no requirement that the factual basis for the claims of all members of a purported class be identical [to satisfy typicality]."). Under this elastic standard named plaintiffs can represent class members who suffer different injuries so long as all of the injuries are shown to result from the same practice. *See Marisol I,* 929 F.Supp. 662, 691 (S.D.N.Y.1996), *aff'd,* 126 F.3d 372 (2d Cir.1997). Typicality may be assumed where the nature of the relief sought is injunctive and declaratory. *See Marisol I,* 929 F.Supp. 662, 691 (S.D.N.Y.1996), *aff'd,* 126 F.3d 372 (2d Cir.1997).

### D. Adequacy of Representation

■ Plaintiffs must satisfy two tests to meet the representational dictates of Rule 23(a)(4). First, they must demonstrate that class counsel is qualified, experienced and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir.1992). Second, they must show that the proposed class members do not have interests antagonistic to one another. *See id.* The court of appeals for the Second Circuit has held that where plaintiffs seek injunctive and declaratory relief requiring defendants to comply with federal law, Rule 23(a)(4) is satisfied even if certain class members pose a potential conflict. *See Marisol v. Giuliani,* 126 F.3d 372, 378 (2d Cir.1997) (the plaintiff class satisfies Rule 23(a)(4) because "[p]laintiffs seek broad based relief which would require the child welfare system to dramatically improve the qualify of all of its services ... [i]n this regard, the interests of the class members are identical.").

### E. Defendant Acts on Grounds Generally Applicable to Class.

Once the plaintiffs seeking class certification satisfy the strictures of Rule 23(a), they must demonstrate that the proposed class falls into one of the three categories of maintainable actions under Rule 23(b).

■ One of these predicates—Rule 23(b)(2)—provides for certification if:

[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ....

Fed.R.Civ.P. 23(b)(2). Rule 23(b)(2) is designed to assist litigants seeking institutional change in the form of injunctive relief. *See Marisol I,* 929 F.Supp. 662, 692 (S.D.N.Y. 1996), *aff'd,* 126 F.3d 372 (2d Cir.1997); *Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 58–59 (3d Cir.1994); 1 H. Newberg, Newberg on Class Actions § 4.11, at 291 (2d ed.1985). Several courts in the Second Circuit have found Rule 23(b)(2) satisfied when the nature of the relief sought by plaintiffs is injunctive and would benefit all class members. *See, e.g., Marisol I,* 929 F.Supp. 662, 692 (S.D.N.Y.1996), *aff'd,* 126 F.3d 372 (2d Cir. 1997); *Brown v. Giuliani,* 158 F.R.D. 251, 269 (E.D.N.Y.1994); *Jane B. ex rel. Martin v. New York City Dep't of Social Servs.,* 117 F.R.D. 64, 71 (S.D.N.Y.1987); *Wilder v. Bernstein,* 499 F.Supp. 980, 994 (S.D.N.Y. 1980); *see also Baby Neal ex rel. Kanter v. Casey,* 43 F.3d 48, 58 (3d Cir.1994) (suggesting that Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief.").

### F. Compatible Standards of Conduct

Another subdivision of Rule 23—(b)(1)—is designed to avoid inconsistent or incompatible standards of conduct for the defendant. The criteria require essentially the same analysis as is necessary under Rule 23(b)(2).

### VI. *Application of Law to Facts:*

### A. Numerosity

■ The author of the New York State Office of Children and Family Services' study of the extent to which children are removed from the victims of domestic violence because they witnessed domestic violence estimated that there are approximately 80 cases per year where domestic violence was the sole reason for a child's removal. *See* R. at 235, 281. Other evidence suggests that there are substantially more mothers in this class. This is well above the sixteen-member floor for establishing numerosity pursuant to Rules 23(a)(1) and 23(b)(2). *See Bruce v.*

*Christian*, 113 F.R.D. 554, 557 (S.D.N.Y. 1986).

Much of the information proving numerosity—ACS case records detailing why children were removed—is in the hands of the defendants, and is unavailable to plaintiffs. This consideration relaxes the numerosity requirement. *See Grant v. Sullivan*, 131 F.R.D. 436, 445 (M.D.Pa.1990) ("[T]he identities of many class members can only be ascertained from the Secretary's records. Thus, the class members are unidentifiable in the sense that the Plaintiffs do not presently know who they are and joinder of them is impracticable. A class of the size in this case satisfies the numerosity requirement.").

### B. Commonality

■ Because this is a child welfare case and plaintiffs' alleged constitutional deprivations stem from a single practice of ACS— removing children from a custodial parent for having witnessed domestic violence in the home—the questions of law and fact identified as "common" satisfy Rule 23(a)(2).

In *Marisol I*, 929 F.Supp. 662 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 372 (2d Cir.1997), a case broader in scope than the instant one where each named plaintiff challenged a different unit of the child welfare system pursuant to myriad constitutional, regulatory, and statutory provisions, commonality was deemed to have been met even though plaintiffs identified their common questions of law and fact at a comparatively high level of generality. *Marisol v. Giuliani*, 126 F.3d at 376 (identifying common question of law as whether each child possesses a legal entitlement to government services of which that child was allegedly deprived is consistent with Rule 23(a)(2) because plaintiffs' "injuries derive from a unitary course of conduct by a single system."). Here, the evidence from mothers, a child, plaintiffs' experts, documents, and testimony produced by defendants shows a common pattern in handling these cases. Moreover, commonality is presumed because this court certifies an injunctive class of civil rights claimants pursuant to Rule 23(b)(2).

### C. Typicality

■ The central claim of both the custodial parents and their children—supported preliminarily by the evidence—is that defendants have engaged in and continue to engage in a course of conduct (removing children from their homes because they allegedly witnessed domestic violence) that deprives plaintiffs of rights to which they are constitutionally entitled. This claim is typical of the claims of proposed class members who are challenging the defendants' practices. Additionally, the very nature of the relief sought, namely, an injunction and a declaration, is ample basis for finding that the claims of the named plaintiffs are typical of those of the proposed class in satisfaction of Rule 23(a)(3).

### D. Adequacy of Representation

■ There is the potential for a conflict of interest between the nonviolent custodians in subclass A and their children. For example, a nonviolent victim of domestic violence may prefer that her child remain in the home with herself and the alleged batterer while the child's best interests call for removal from a potentially dangerous home environment. Contrariwise, a child may wish to remain in a violent home due to her loyalty and attachment to the nonviolent custodian whereas the nonviolent custodian would prefer that she be removed for her own physical and emotional protection. Accordingly, the court is certifying a subclass of children to be represented by Lawyers for Children, Inc. and the Juvenile Rights Division of the Legal Aid Society.

Dividing the class into a subclass of nonviolent custodians and a subclass of their children is also desirable for prudential reasons. *See Marisol v. Giuliani*, 126 F.3d 372, 379 (2d Cir.1997) (recommending identification of subclasses on remand of child welfare class action because it "will allow the district court to weed out, and if necessary, dismiss those claims for which no named plaintiff is a representative. The district court will be able to conduct the trial in a more orderly manner, by tying the order of proof to particular claims raised by the individual subclasses . . . [S]ubclass certification will provide

the defendants with sufficient notice of the specific charges they face in a timely fashion.").

To further protect the children's interests, the court appointed Martha J. Olson, Esq. to act as next friend for members of subclass B. Rule 17(c) of the Federal Rules of Civil Procedure authorizes the court to "appoint a guardian ad litem for an infant or ... make such other order as it deems proper for the protection of the infant....".

### E. Consistent Adjudications Applicable to Class Members

■■■ The instant case presents a situation contemplated by the framers of Rule 23(b)(2). *See* Fed.R.Civ.P. 23(b)(2) advisory committee notes (1966) ("This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate ... [i]llustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class ...."); *see also Marisol I*, 929 F.Supp. 662, 692 (E.D.N.Y.1996), *aff'd*, 126 F.3d 372 (2d Cir.1997).

Certification of the proposed class pursuant to Rule 23(b)(2) is both necessary and appropriate given the nature of the plaintiffs' allegations and the type of relief sought. The court provided for advertised notice in this case, even though no notice is required under Rule 23(b)(2).

## VII. *Special Problem of Subclass B:*

The class certification analysis for subclass B differs in part from that for A because of the settlement agreement approved in *Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir.2000). It provided that the claims of "[a]ll children who are or will be in the custody of [ACS], and those children who, while not in the custody of ACS, are or will be at risk of neglect or abuse and whose status is known or should be known to ACS" shall expire on December 15, 2000. *Marisol*, 218 F.3d at 136 (*quoting Marisol I*, 929 F.Supp. 662,

669–72 (S.D.N.Y.1996)). Specifically, the settlement agreement states:

> Effective upon the expiration of the term of this Agreement on December 15, 2000, Plaintiffs ... hereby jointly and severally release and forever discharge, on the merits and with prejudice, the City ... of and from any and all manner of equitable claims, actions, costs, expenses and attorneys' and expert fees ... whether known or unknown, foreseen or unforeseen, matured or unmatured, accrued or not accrued, direct or indirect, that the named Plaintiffs and the members of the class, and each of them, ever had, has or have on December 15, 2000, or can, shall or may thereafter have against the releasees ... for, by reason of, involving, concerning, arising from or in any way relating to any equitable claim which is or could have been stated against the releasees in the Marisol Litigation ... and which claim is based on facts, events, actions or omissions by the City or any releasee which took place from the date of Court approval of this Agreement to December 15, 2000 ....

*Marisol*, 218 F.3d at 141.

The definition of the plaintiff class in *Marisol* is arguably broad enough to encompass the claims of children of nonviolent custodians who were removed and returned by ACS prior to December 15, 2000. Thus, many of the children of the named plaintiffs in subclass A are ineligible for class membership in subclass B because they were removed and sustained all their injuries at the hands of ACS prior to December 15, 2000. Counsel for subclass B have presented documentation of class representatives who were removed by ACS after the December 15, 2000 cutoff date. Others were removed before December 15, 2000, but suffered injury thereafter because they were not promptly returned to their mothers.

Given the estimate of the expert for the state that ACS effects approximately 80 removals per year solely because a child has witnessed domestic violence, numerosity is satisfied as to subclass B. The court's finding is that this estimate is too low. The remain-

ing requirements of Rule 23 are met for the essentially the same reasons listed in Part VI., *supra*, with respect to subclass A.

### VIII. *Conclusion:*

Because plaintiffs have met all of the prerequisites of Rule 23(a) and have set forth an action maintainable under Rule 23(b)(1)(A) and Rule 23(b)(2), their motion to certify the class defined in Part II, *supra*, is granted.

SO ORDERED.