Matter of Shanaye C. (2003 NY Slip Op 23976)

Matter of Shanaye C.

2003 NY Slip Op 23976 [2 Misc 3d 887]

August 13, 2003

Family Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, May 5, 2004

[*1]
In the Matter of Shanaye C. and Others, Children Alleged to be Abused. James B., Respondent.
Family Court, Kings County, August 13, 2003

APPEARANCES OF COUNSEL

Michael A. Cardozo, Corporation Counsel, Brooklyn (Ted Baron of counsel), for petitioner. Brooklyn Defender Services, Brooklyn (Jamie Burke of counsel), for respondent. Legal Aid Society, Brooklyn (Amy Serlin of counsel), Law Guardian. Erwin Weisberg, Brooklyn, guardian ad litem.

{**2 Misc 3d at 887} OPINION OF THE COURT

Bryanne A. Hamill, J.
{**2 Misc 3d at 888}Administration for Children's Services (hereinafter ACS) filed a petition on April 24, 2002 charging respondent father with abuse of three subject children, Shanaye C., age 11, Quincy C., age 6, and Zoey C., age 4. The petition alleges essentially that on or about April 20, 2002, at approximately 4:00 p.m., respondent father, James B., strangled Sabrina C., the mother of the subject children, and also strangled the children's maternal grandmother, Susan G., resulting in their deaths and thereby removing from the children's lives their primary caregiver, their mother, Sabrina C.
ACS further alleges that the children, Shanaye, Quincy, and Zoey, who were present in the home at the time of the killings, were exposed to a risk of substantial harm, and therefore are abused, or in danger of becoming abused children, pursuant to section 1012 (e) of the Family Court Act.
This court conducted a fact-finding in June 2003. ACS called two witnesses, Detective Marcus Martinez and Police Officer David Zabransky. This court fully credits the testimony of Detective Marcus Martinez and Police Officer David Zabransky. Further, this court finds the respondent father's statement, partially exculpatory, to have been voluntarily given to Detective [*2]Martinez, and thus, admissible for this fact-finding. In addition to respondent father's statement to police, ACS moved into evidence subject child Shanaye's statement to police, and the medical examiner's reports regarding Sabrina C. and Susan G. Counsel stipulated that respondent father is the father of the two younger children, Quincy and Zoey, and the person legally responsible for Shanaye.
The respondent father did not call any witnesses. No negative inference was drawn against respondent father for his failure to testify, due to mental incompetence and pending murder charges.
Based upon the credible testimony adduced at the fact-finding as well as documentary evidence, this court makes the following findings of fact and conclusions of law.

Findings of Fact

On April 20, 2002, around 4:00 p.m., while Police Officer David Zabransky was on routine patrol, he was stopped by respondent father, who asked him for assistance with his unconscious girlfriend. Respondent father brought Zabransky to the 4th floor of 1149 Putnam Avenue, Brooklyn, where two women were found laying on the floor, with three children inside the apartment.{**2 Misc 3d at 889} Eleven-year-old Shanaye, who was at the window of the apartment, eventually opened the door for the police.
At about 4:15 p.m., Detective Marcus Martinez responded to the location and observed that the two women on the floor in apartment 4E were dead; one of the women, later identified as Sabrina C., the children's mother, was naked; three children, Shanaye, age 11, Quincy, age 6, and Zoey, age 4, were present in the apartment; the apartment was in disarray; and respondent father had scratches on his face and neck, scraped knuckles, and bloodstains on his jogging pants and shoes.
Detective Martinez brought respondent father to the police station for questioning, where respondent father voluntarily admitted that he was having problems with Sabrina C.; he was fighting in the apartment with her, while the grandmother and three children were present on April 20, 2002; and during this time, Shanaye was panicking and jittery.
Shanaye provided the following credible statement to the police:
"My dad [James B.] stayed at our house last night but left early in the morning. He had come back before I woke up and had breakfast. I was in the bedroom and I heard my dad start yelling at my mom. They were arguing and he was hitting my mom. He made all of us (Zoey, Quincy, my mom, and me) go into the bathroom and told us to stay there. I asked him not to hit my mom anymore and he said he wouldn't. My mom had tapped me and whispered to me to call 911. Then him and my mother went to the bedroom and started yelling again. The door bell rang and my mom yelled for me not to answer it. The bell kept ringing so I answered it. It was my grandmother and she came in. My mom yelled at grandma to get my dad out of here, and she came into the room with no clothes on. My dad came after her and my grandmother stepped in front of him and asked what's going on. My mother said get him out of here he's going crazy. My dad told me to turn away and go back to the bedroom. As I did I heard him slapping her and grandma. My mother was on the floor crying and my grandma was in the chair. I went to the bedroom with Zoey and Quincy and was praying for [*3]my mommy. After a little while my dad came in the room and made me promise to take care of Zoey and Quincy. {**2 Misc 3d at 890}He said he was going out to get us ice cream. The police came to the window in the back room after my dad left and told me to go and open the front door. When I went out to the living room I saw my mom and grandma lying on the floor. I went over to my mom and tried waking her up but she wouldn't wake up. I then went and let the police in and they told me to go back and wait in the bedroom."
The pertinent facts from the police and medical examiner's reports are as follows: (1) James B. was 6 feet 5 inches and weighed 300 pounds; (2) Sabrina C., the mother of the children, was 28 years old, 5 feet 1 inch, weighed 200 pounds, and her cause of death consisted of blunt impact of her head, torso, extremities, chest compression and smothering; and (3) Susan G., the grandmother, was 51 years old, 5 feet, weighed 143 pounds, and her cause of death also consisted of blunt impact of her head, torso, extremities, and smothering.
Given the totality of the credible circumstantial evidence, this court finds that respondent father brutally killed the three children's mother and maternal grandmother on April 20, 2002, around 4:00 p.m., while the children were present in the apartment, hearing and, at times, seeing the violence, which spanned at least 10 to 15 minutes.

Conclusions of Law

Administration for Children's Services has established the allegations contained within their petition by a preponderance of the evidence. Subject child Shanaye's statements, introduced through Detective Martinez, are sufficiently corroborated by the medical evidence and the police testimony, as well as portions of respondent father's statements made to, and introduced through, Detective Martinez.[FN*]

At issue is whether these facts constitute abuse, pursuant to Family Court Act § 1012 (e) (i) or (ii). Family Court Act § 1012 (e) defines an abused child as 
"a child less than eighteen years of age whose parent or other person legally responsible for his care{**2 Misc 3d at 891} 
"(i) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ, or 
"(ii) creates or allows to be created a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ." (Family Ct Act § 1012 [e] [i], [ii].) 
In order for section 1012 (e) (i) to be [*4]applicable, there must be actual physical injury to a child. In the instant case, no physical injury was caused to any of the three children.
Thus, the issue becomes whether the father created a substantial risk of physical injury to any of the children, so as to warrant an abuse finding, pursuant to section 1012 (e) (ii). Under the totality of the circumstances, this court finds that respondent father created a substantial risk of physical injury to the subject children, by creating and placing the children in a zone of clear and present physical danger, which would be likely to cause death or protracted impairment of physical or emotional health.
This zone was created by the father in several ways. First, he was assaulting their mother over a period of time, while the three children were present. The violence moved throughout the two bedroom apartment, as demonstrated when Shanaye went into the bathroom with the mother and the other children, and then later into the unlocked bedroom. In order to get help for her mother, Shanaye left the bedroom and opened the front door to let her grandmother in. As the grandmother tried to protect her own daughter, she was killed by the children's father. Second, respondent father's statements and actions, where two women simultaneously fighting for their lives were both killed by blunt trauma and smothering, demonstrate that this father was determined to kill the mother. It is apparent that any person who got in his way was going to be hurt or killed. Third, the evidence of the respondent father's mental state, including anger and "craziness," placed all persons in the home, including the three children, in a zone of physical danger.
These circumstances which created the substantial risk of physical injury to the children would be likely to cause protracted {**2 Misc 3d at 892}impairment of their emotional health, at a minimum. Although no expert was called to testify, courts have previously held that expert testimony is not necessary to establish emotional harm to children as a result of domestic violence. (See Matter of Lonell J., 242 AD2d 58 [1st Dept 1998]; Matter of Athena M., 253 AD2d 669 [1st Dept 1998].) Reasonable inferences and common sense dictate that all three children are at risk for protracted impairment of emotional health, by virtue of witnessing the domestic violence which resulted in the deaths of their mother and grandmother as well as its aftermath; by virtue of being uprooted from their home; and regarding Shanaye in particular, by feeling responsible for her grandmother's death.
It should be noted that ACS usually charges parents with neglect, pursuant to section 1012 (f) (i) (B) of the Family Court Act, when domestic violence occurs in the presence of children. (See, Matter of Deandre T., 253 AD2d 497 [2d Dept 1998]; Matter of Athena M., 253 AD2d 669 [1st Dept 1998]; Matter of Tami G., 209 AD2d 869 [3d Dept 1994]; Matter of Theresa CC., 178 AD2d 687 [3d Dept 1991].) The relevant section of the neglect statute relied upon, reads as follows: 
" 'Neglected child' means a child less than eighteen years of age
"(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care . . . 
"(B) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof . . . or by any other acts of a similarly serious nature requiring the aid of the court." (Family Ct Act § 1012 [f] [i] [B].)
Although the neglect standard is undoubtedly met in the instant case, ACS has charged abuse, [*5]notwithstanding the absence of actual physical injury to the three children. The domestic violence here was so severe so as to place all three children at great risk of substantial injury. Further, the protracted impairment of the children's emotional health, just as serious a consequence as actual physical injury, justifies a finding of abuse. (See Matter of Shane T., 115 Misc 2d 161 [Fam Ct, Richmond County 1982]; see also Comment, Protecting New York's Children: An Argument for Creation of a Rebuttable Presumption Against {**2 Misc 3d at 893}Awarding a Spouse Abuser Custody of a Child, 60 Alb L Rev 1345 [1997]; Comment, Unseen Victims: Acknowledging the Effects of Domestic Violence on Children Through Statutory Termination of Parental Rights, 84 Cal L Rev 757 [1996].) Accordingly, this court holds that these domestic violence homicides, committed in the manner done so by the respondent father, constitute abuse of all three children, pursuant to section 1012 (e) (ii) of the Family Court Act.

Footnotes

Footnote *: Previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect. Any other evidence tending to support the reliability of the previous statements, including, but not limited to, the types of evidence defined in this subdivision shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse or neglect. (Family Ct Act § 1046 [a] [vi].)