[763 NYS2d 583]

In the Matter of DAPHNE G., a Child Alleged to be Neglected. DAVID G., Appellant; ADMINISTRATION FOR CHILDREN'S SERVICES, Respondent.

First Department, August 21, 2003

---

**APPEARANCES OF COUNSEL**

*Dodd R. Terry* of counsel *(Monica Drinane, Law Guardian, The Legal Aid Society, Juvenile Rights Division*, attorney), for Daphne G.

*John A. Pappalardo* of counsel *(Farber, Pappalardo & Carbonari*, attorneys), for appellant.

*Elizabeth I. Freedman* of counsel *(Francis F. Caputo* on the brief; *Michael A. Cardozo, Corporation Counsel,* New York City, attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

The issue presented on appeal is whether a finding of neglect may properly be based on a father's conviction of attempted assault arising out of an incident of domestic violence against the mother, where the child was not present at the time and not even in the custody of the parents.

The subject child, Daphne G., was born on November 24, 1998. Thirteen days later, on December 7, the Administration for Children's Services (ACS) filed a neglect petition in Family Court, New York County, alleging that the mother, known to the court through prior neglect findings, used crack cocaine and other drugs and that the father, who knew or should have known that the mother used crack cocaine during her pregnancy, took no action to protect Daphne G. At a hearing on that date, the court remanded the child to the Commissioner of Social Services. On January 12, 1999, Daphne G. was paroled to the custody of the father's second cousin, whom the father had recommended. Eventually, on March 6, 2000, the mother admitted to neglecting Daphne G. by using drugs during her pregnancy, on the basis of which the court entered a finding of neglect against her.

On or about March 27, 2000, ACS moved for leave to amend the petition to allege that the father had been arrested for multiple felony offenses, including assaulting the mother, and that he had pleaded guilty to attempted assault in the second degree. The court granted the motion. The amended petition further alleged that the father abused drugs.

Thereafter on April 19, 2000, ACS, supported by the law guardian, moved for summary judgment against the father on the neglect petition based on his June 30, 1999 plea of guilty to the crime of attempted assault in the second degree, for which he was sentenced to 1½ to 3 years in prison. The transcript of the plea proceeding annexed to the moving papers showed that, as part of the plea allocution, the father admitted that on December 22, 1998 he physically assaulted his wife by throwing a telephone at her, hitting her in the thigh and leg, and attempting to choke her with the intention of causing serious physical injury. The father did not submit opposing papers, although, on November 14, 2000, after the court issued its decision granting the motion for summary judgment on the basis of the assault, his counsel argued orally that "the child was * * * not * * * in anybody's care at that time * * * when this assault occurred, * * * that there would be no nexus between

the assault and any risk of neglect." The court made no determination with respect to the drug charge.

That same day, the court entered a dispositional order on the basis of the neglect finding and ordered the father to enroll in an anger management program and drug program and that he submit to random drug testing. The father appeals. Since, in our view, the assault on the mother, out of the presence of the child, cannot, by itself, be the basis of a neglect finding, we reverse and remand the matter for further proceedings on the petition.

Insofar as is relevant, Family Court Act § 1012 (f) provides:

> " 'Neglected child' means a child less than eighteen years of age

> "(i) whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his [or her] parent or other person legally responsible for his [or her] care to exercise a minimum degree of care * * *

> "(B) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, * * * or by any other acts of a similarly serious nature requiring the aid of the court."

The father's assault of the mother in the child's absence does not, by itself, expose the child to a substantial risk of harm so as to constitute proof of neglect. As this record shows, the child was placed in the custody of ACS on December 7, 1998, some two weeks before the assault against the mother took place. As repugnant and serious as the father's acts towards the mother are, the fact is that at the time of the assault the child was not present or, for that matter, in the mother's or father's care or custody. As the father argued before the motion court, there is no nexus between the domestic violence and the neglect finding. The incident of domestic violence that occurred while the child was not present is insufficient to establish that the child's physical, mental or emotional condition was in imminent danger of becoming impaired.

The Second Department addressed the precise issue presented here in *Matter of Tali W.* (299 AD2d 413 [2002]). In vacating the factfinding order, the Court held: "[T]here is no evidence that the one act of physical violence perpetrated

against the mother, which the father admitted during his plea colloquy in a related criminal proceeding, took place in the children's presence, or impaired their physical, mental, or emotional conditions, or placed them in imminent danger thereof [citations omitted]. Moreover, since the presence of the children was not an element of the criminal charge of which the father was convicted, and was not litigated in any manner in the criminal proceeding, it was improper to afford a collateral estoppel effect to the father's conviction." (*Id.* at 414-415.)

While it cannot be gainsaid that a person who has committed acts of domestic violence is also capable of unreasonably inflicting or allowing to be inflicted harm or creating a substantial risk of harm to a child, a plain reading of the statute does not lend itself to so expansive an interpretation as to include the capacity to inflict harm. Indeed, the danger of so broad an interpretation as to cover the incident that occurred here is that anyone found to have committed an act of domestic violence could be subject to a finding of child neglect irrespective of when the domestic violence occurred and whether the child was even exposed to it.

It is noteworthy that in the cases where domestic violence has resulted in a finding of neglect the violence has occurred in the presence of the child (*see e.g. Matter of Jeremiah M.*, 290 AD2d 450 [2002]; *Matter of Jasmine R.*, 258 AD2d 361 [1999]; *Matter of Athena M.*, 253 AD2d 669 [1998]; *Matter of Deandre T.*, 253 AD2d 497 [1998]; *Matter of Lonell J.*, 242 AD2d 58 [1998]). In those cases, it is the child's exposure to the violence that forms the basis of the neglect finding, not a risk that the parent who abuses his or her domestic partner will also abuse the child. As the Court stated in *Matter of Deandre T.* (253 AD2d at 498), where the evidence was found to be sufficient to prove that the father's violent abuse of the mother in the child's presence impaired the child's mental and emotional health, "Given the Legislature's awareness of and concern for the detrimental effects of domestic violence on children, Family Court Act § 1012 (f) (i) (B) was drafted in sufficiently broad terms to encompass domestic violence as a permissible basis upon which to make a finding of neglect." In this regard, it is significant that while Family Court Act § 1046 (a) (i) specifically provides that abuse or neglect of one child is evidence of abuse or neglect of another child, there is no similar provision imputing neglect of a child in the case of spousal abuse.

We are neither unmindful of nor unsympathetic to the harm suffered by children who live in an atmosphere where domestic

violence takes place. The clear provisions of Family Court Act § 1012 (f), however, cannot be read so expansively as to apply to this case. The dissent's concern that the father may, in the future, succeed in obtaining custody if we do not uphold the finding of neglect based on domestic violence is overstated, since, even without the neglect finding, the facts underlying his conviction will undoubtedly be considered in any request by him for custody. On the other hand, it is noted that even a finding of neglect would not necessarily preclude the father from seeking and obtaining custody at some future date.

Accordingly, the order of the Family Court, New York County (Helen Sturm, J.), entered on or about November 14, 2000, which, inter alia, found that respondent father had neglected the subject child, should be reversed, on the law, without costs, the neglect finding vacated and the matter remanded for further proceedings.

ELLERIN, J. (dissenting). In his plea of guilty to attempted assault in the second degree, respondent allocuted to physically assaulting his wife by throwing a telephone at her, hitting her in the thigh and leg, and attempting to choke her with the intention of causing serious physical injury. The court properly found that this assault by the father on the mother exposed the child to a substantial risk of harm and that therefore she is a neglected child pursuant to Family Court Act § 1012 (f).

The statute provides that a neglected child is a child of less than 18 years of age "whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent * * * to exercise a minimum degree of care * * * in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof" (§ 1012 [f] [i] [B]).

It is settled that children who witness acts of violence between their parents may be in imminent danger of becoming impaired, if they have not already suffered actual emotional harm (*see e.g. Matter of Athena M.*, 253 AD2d 669 [1998]). Increasingly, it has been recognized that domestic violence may harm a child who does not personally witness it (*see e.g.* Weithorn, *Protecting Children from Exposure to Domestic Violence: The Use and Abuse of Child Maltreatment*, 53 Hastings LJ 1, 84). Children who do not contemporaneously observe violent incidents do nevertheless live with the aftermath of

and the context surrounding violent incidents (*id.*). The victim of the violence may be bruised or otherwise injured, perhaps so severely as to require hospitalization or cause disability; she may be frightened, distraught, depressed or emotionally unavailable to the children (*id.* at 84-85; *see also Developments in the Law: Legal Responses to Domestic Violence, VI. Battered Women and Child Custody Decisionmaking,* 106 Harv L Rev 1597, 1610 ["At the very least, the pressures endured by the victim impair her ability to care for and to provide attention to her children."]). Moreover, studies have shown that men who abuse their wives have a high tendency to abuse their children as well (*see* Kurtz, Comment, *Protecting New York's Children: An Argument for the Creation of a Rebuttable Presumption against Awarding a Spouse Abuser Custody of a Child,* 60 Alb L Rev 1345, 1352). In any event, even if they are neither direct victims nor witnesses of the abuse, children "suffer harm from the mere presence of a father who endorses violence as a means of settling family disputes" (Haddix, Comment, *Unseen Victims: Acknowledging the Effects of Domestic Violence on Children through Statutory Termination of Parental Rights,* 84 Cal L Rev 757, 788). Thus, children living in homes where domestic violence occurs are at risk both for direct physical or sexual victimization in the family and, even if they are not physically harmed and do not witness violent incidents, for "a range of effects on their emotional, social, and cognitive functioning" (Weithorn, 53 Hastings LJ at 85).

The majority's rationale for reversal is that the child was not present in the home at the time of the particular violence resulting in respondent's incarceration. However, we cannot ignore the fact that, in the absence of the instant order finding neglect due to respondent's domestic violence, a future application by respondent seeking custody of the child may well succeed, as evidenced by many precedents, despite the plethora of anecdotal and statistical evidence that the children of violent families suffer deleterious effects of violence, be they targets, witnesses or simply family members. There can be no justification for waiting for the child of such a family to be abused before permitting a court to act under the statute that intends to protect such children.

Therefore, and notwithstanding that the child was absent from the scene of the assault and was not at the time in the care or custody of either parent, I would affirm the finding of neglect.

NARDELLI, J.P., SAXE and ROSENBERGER, JJ., concur with SULLIVAN, J.; ELLERIN, J., dissents in a separate opinion.

Order, Family Court, New York County, entered on or about November 14, 2000, reversed, on the law, without costs, the neglect finding vacated and the matter remanded for further proceedings.